**FRANCO et al. v. TEXAS EMPLOYERS' INS. ASS'N.**

No. 2438.

Court of Civil Appeals of Texas. El Paso.
June 5, 1930.

Rehearing Denied June 26, 1930.

Chas. Windberg, Jr., and R. A. D. Morton, both of El Paso, for appellants.

Lea, McGrady, Thomason & Edwards, of El Paso, for appellee.

WALTHALL, J.

On September 13, 1929, the Industrial Accident Board made a compensation insurance award under the Workmen's Compensation Law to Catarino Franco and wife, Hermenegilda Catarino Franco, against the Texas Employers' Insurance Association, and from which award no appeal was taken. The award was for $7 per week, beginning to accrue on April 13, 1929, and payable weekly for 360 weeks, and providing in the award that the usual percentages should be paid to Charles Windberg, Jr., as attorney for claimants.

This suit was brought by the Francos and Windberg on October 9th, under section 5a, article 8307, Revised Civil Statutes, alleging that an installment of compensation as set out in said award was due on October 5, 1929, and that the defendant insurance company has not made said payments and has failed and refused, without justifiable cause, to make same promptly, as they matured, as provided in said award, and has thereby failed and refused to obey or comply with said award, and by reason of said failure and refusal and such default the plaintiffs, Francos and Windberg, Jr., have exercised their right to mature the entire claim and award, and have elected to bring suit to recover the entire unpaid portion of their respective interests as stated and elected to sue to enforce said award, and that by reason of such election all of said claim and award is all past due, and unpaid, aggregating the sum of $2,352, interest, reasonable attorney fees, damages, and penalty, stating same, for all of which, and in the proportions due each, they sue. They make and attach to their petition as an exhibit a copy of said award.

The Texas Employers' Insurance Association answered by general denial and special denial to the effect that it has been at all times ready, able, and willing to perform the terms of said award; that prior to said award it paid the funeral expenses of deceased, Catarino Franco, Jr., in the sum of $100; in conformity with the Workmen's Compensation Law, which amount is deductible from the compensation to be paid claimants under said law; that in addition thereto it issued its checks on September 18, 1929, in favor of claimants and their attorney, one in the sum of $146.28, payable to claimants, and one in the sum of $25.85, payable to claimant's attorney, pursuant to said award; that both claimants are residents of Chihuahua, Mexico, and did call and receive their checks on September 26, 1928, forwarded to its El Paso office, from its home office and place of insurance of said checks in Dallas, Tex.; that by a letter dated October 2, 1929, claimants' attorney, Charles Windberg, Jr., on October 3, 1929, informed defendant's El Paso office that it was claimant's desire that all compensation checks thereafter should be forwarded or delivered to Mr. T. A. Courchesne at his office or box 200, El Paso, Tex., said attorney claiming that the next check was due and payable October 5, 1929, at which time an additional check was in transit from Dallas to defendant's El Paso office;

that claimants' attorney knew that defendant's El Paso office had nothing to do with the issuance of checks in payment of compensation claims, knew that said communication would have to be forwarded to defendant's Dallas office before any change in address of checks could be made, even if the defendant were under obligation to do so; said additional checks arrived at El Paso October 4, 1929, and could and would have been delivered to claimants or to claimants' attorney on October 5, 1929, had they called for same, which they did not do; that on October 8, 1929, defendant's agent at El Paso, Tex., E. M. Ledbetter, advised claimants' attorney, Charles Windberg, Jr., that said checks had been issued by the Dallas office and were in possession of Ledbetter, ready for delivery when called for, and that said Windberg then and there, acting for himself and claimants, declined to accept said checks and told Ledbetter to return the checks to Dallas, as claimants would not accept any further checks; that thereafter, in due time, other and additional checks arrived from Dallas, and Ledbetter advised claimants' attorney, Windberg, that said checks had arrived and were ready for delivery, and tendered same to Windberg, who declined to receive same and advised Ledbetter that it would be useless to tender any more checks, as they would not be accepted by claimants or himself; shortly after the 5th of October, 1929, said checks were tendered to T. A. Courchesne, but Windberg caused Courchesne to decline to accept same; that defendant has been ready, willing, and able to comply with the award of the board, and has endeavored to comply, but has been prevented by claimants' attorney in declining and refusing to accept said checks when due, and defendant could and would have paid all of said payments continuously and uninterruptedly on demand, and up to plaintiffs' refusal of payments, and in fact had paid more than the law required; defendant now tenders to plaintiffs and their attorney all payments due under said award up to the trial of this case; that by acceptance of the payment of $172.13, on September 26, 1929, plaintiffs are estopped to claim any default prior to September 28, 1929, and, by reason of the above facts pleaded, plaintiffs are estopped to, and have waived any delay in payment since that date.

Plaintiffs answered by general denial.

The case was tried without a jury.

The court filed findings of fact and conclusions of law.

The findings are quite lengthy, and very much abbreviated, the essential facts in this controversy are substantially as follows:

On September 13, 1929, the Industrial Accident Board made its final ruling on plaintiffs' claim for compensation in the matter of the death of Catarino Franco; said *ruling* provides that plaintiffs, Catarino Franco and Hermenegilda B. Franco, recover and have paid to them by defendant, Texas Employers' Insurance Association, compensation at the rate of $7 per week for the definite and fixed period of 360 weeks, beginning to accrue April 13, 1929, and being payable in weekly installments thereafter until the full period of 360 weeks have expired, to be paid in the ratio of one-half to Catarino Franco, Sr., and the remaining one half to Hermenegilda B. Franco, mother, and further providing that out of such compensation in favor of the Francos *15 per cent. of the first $1,000 and 10 per cent. of all amounts in excess of the first $1,000 should be paid out of the installments to Charles Windberg, as attorney for representing the claimants before the board*, said sums to be paid to Windberg out of the installment payments as they accrue and are paid, less any amount theretofore paid by defendant arising out of said claim.

Neither party having appealed from the award, the award became final 20 days after September 13, 1929.

On July 27, 1929, defendant paid the funeral expenses of deceased, Catarino Franco, Jr., in the sum of $100.

Defendant's home office is at Dallas, Tex.; and it maintains an office in El Paso, Tex., with E. M. Ledbetter as district manager. It is not a part of Ledbetter's duties to issue checks in payment of compensation due claimants; such checks are prepared and issued at Dallas and mailed to the company's office at El Paso in the First National Bank building, where it was customary for claimants in El Paso to call for and receive their compensation checks.

After the award defendant paid to plaintiffs $172.13, made up of two checks dated September 18, 1929, one for $146.48, payable to the Francos, and one for $25.65 payable to their attorney, Windberg, the checks received by Ledbetter at the El Paso office of defendant; the claimants called in person at said office on September 28, 1929, and received such checks from Ledbetter, and cashed same. On September 28, 1929, the Francos appointed T. A. Courchesne their attorney in fact to receive any moneys due them as claimants. On October 2, 1929, Windberg, without having been requested by either of the Francos, wrote a letter to defendant, directed to its El Paso office, stating that it was the desire of the Francos that thereafter all compensation checks should be forwarded to T. A. Courchesne at his office or box 200, El Paso, Tex., Windberg claiming the next check was due and payable October 5, 1929. That letter was received at defendant's El Paso office October 3, 1929, at which time the additional checks were in transit from defendant's Dallas office to its El Paso office.

Ledbetter promptly forwarded Windberg's letter of October 2d to the Dallas office, which it would have reached in ordinary course of mail about October 6th. The additional checks were for $11.90 payable to the Francos, and $2.10 payable to Windberg; they reached defendant's El Paso office on October 4th, and would have been delivered by defendant's El Paso office to claimants or to T. A. Courchesne, for the Francos, had they been called for; the checks were not called for by any one. Windberg knew when he wrote the letter of October 2d that defendant's El Paso office had nothing to do with the issuance of compensation checks, and that such was done at defendant's Dallas office.

On October 8th Ledbetter saw Windberg on the street in El Paso and told him the compensation checks were still in defendant's El Paso office, at which time Windberg advised Ledbetter that claimants would not accept such checks, and, in substance, that it would be useless to tender these checks or any subsequent checks, as they would be refused by claimants. Windberg caused Courchesne to decline to accept said checks at any time after October 5, 1929. Defendant was ready, able, and willing to make all weekly payments of compensation as they accrued, after October 5, 1929, and would have made same had the checks been called for by any of said parties at any time.

At the trial defendant, in open court, tendered and offered to pay any amount of compensation due, which tender was refused by plaintiffs' attorneys. This suit was filed on October 9, 1929.

The court concluded: The payment of $172.13, received and accepted by claimants, was made in due time; exclusive of the $100 funeral expenses paid by defendant in July, 1929, the $172.13 was all the payment that could be expected up to and including September 28, 1929; the amount of the two checks payable to claimants aggregating $14, which reached defendant's El Paso office on October 4, 1929, was sufficient in amount to discharge defendant's obligations to October 12, 1929, without taking into consideration the $100 paid as funeral expenses, and that when this suit was filed on October 9, 1929, defendant was not in default under the facts and circumstances of this case. Plaintiffs were not entitled to mature the award in its entirety, and were not entitled to recover the penalties and attorney's fees for the prosecution of this suit.

The court entered judgment for the defendant insurance company, and plaintiffs, claimants, prosecute this appeal.

#### Opinion.

Appellants, claimants, submit that appellee defaulted in the payments due on October 5, 1929, and for that reason it was their right to have the unpaid part of the award matured, and to recover the penalty and attorney fees, under section 5a of article 8307, Rev. Civ. Statute.

Appellants make no point in their brief, and in their oral argument admitted that defendant's checks were sufficient as a medium of tender of payment. So that we need not refer to the admitted fact that checks are mentioned in the record, and referred to in the transactions between the parties, instead of money as the medium of tender of payment.

The latter part of section 5a, of article 8307 (Part 2 Workmen's Compensation Law), reads:

"Where the board has made an award against an association requiring the payment to an injured employee or his beneficiaries of any weekly or monthly payments, under the terms of this law, and such association should thereafter fail or refuse, without justifiable cause, to continue to make said payments promptly as they mature, then the said injured employee or his beneficiaries, in case of his death, shall have the right to mature the entire claim and to institute suit thereon to collect the full amount thereof, together with twelve per cent. penalties and attorney's fees, as herein provided for."

Appellee insurance company did not, as a fact, make prompt payment, that is, did not make a physical delivery of the compensation check due on October 5, 1929, under the award, as required by the above-quoted portion of the statute; the material question then presented is, Do the facts in the record show a justifiable cause for its failure to do so?

The Workmen's Compensation Law does not fix the place where the compensation payments are to be made, nor does the record show that the parties to this controversy have agreed upon a place of payment. In the absence of an agreement or a stipulation to the contrary, as to place of payment, the general rule seems to be that a debt is payable at the place where the creditor resides, or at his place of business if he has one, or wherever else he may be found; and it is ordinarily the duty of the debtor to seek the creditor for the purpose of making payment, provided the creditor is within the state of his residence when the payment is due.

Corpus Juris, vol. 48, p. 592, par. 8, and notes thereunder. The place of payment, however, may be fixed by implied agreement as well as by expressed. The same reference as above and notes. Here the compensation creditors had theretofore gone to the El Paso office of appellee and there received payment by checks delivered to them by E. M. Ledbetter, representing appellee. The Francos had their domicile in Mexico, and, while they had given a power of attorney to T. A. Courchesne to represent them in the receipt of their

compensation allowance, T. A. Courchesne testified that:

"I never had anything to do with receiving of the check until that day (apparently the day the power of attorney was given) the woman (Mrs. Franco) said in Mr. Windberg's presence that she would like for me to get the checks and forward them to her in Mexico. She told me that she would like for me to get the checks and forward them to her. I did not go up there (Ledbetter's office) on the 5th of October to get a check. * * * I never went up there after a check. I have never seen Mr. Franco."

Without restating the findings of the trial court, we refer to such findings for other references therein, as to the place where the checks were, and why the checks were not delivered on October 5th or thereafter.

The record shows, without question, that the compensation check was in El Paso office of defendant on the fourth day of October, and ready for delivery to any of the appellees; Windberg was notified that the checks were in Ledbetter's office, where the court found it was customary for claimants in El Paso to call for and receive their compensation checks, and ready for delivery, and would have been delivered had any of the appellants or T. A. Courchesne called for them on October 5th, or at any time thereafter had they been called for. Before the suit was filed Windberg was notified by Ledbetter that the checks were then in the office, at which time Windberg notified Ledbetter that the checks would not be accepted and it would be useless to tender them.

The court also found that Windberg caused T. A. Courchesne to decline to accept any checks after October 5th. The trial court did not find specifically whether defendant failed or refused, without justifiable cause, to make the payment of October 5th, the only payment involved here, but the court concluded that appellee was not in default under the facts and circumstances of the case.

Appellants refer us to Minor v. London Guarantee & Accident Co. (Tex. Com. App.) 280 S. W. 163, and Dixon v. United States F. & G. Co. (Tex. Civ. App.) 293 S. W. 291, as in point on the facts of this case. We have very carefully reviewed the cases, and believe they are not directly in point. They are suits to mature an award of the board and for the statutory penalty and attorney fees, and discuss the article of the statute involved here, but the facts are not similar. In those cases the insurance companies had made no effort to make the payment when due. Here the insurance company had the checks ready for delivery on the day of payment, and at the office where claimants had received the last preceding check, and where it was customary at El Paso to deliver such checks.

The trial court's findings and conclusions on the findings, we think, are sufficiently sustained by the evidence.

We have considered all of the points presented, and they are overruled.

The case is affirmed.